1

2

3

4

5

6

7                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
8                                      AT SEATTLE

9

10      GS HOLISTIC, LLC,                        CASE NO. C23-0314JLR

11                          Plaintiff,           ORDER

                  v.
12

13      EMPIRE SMOKE SHOP2, LLC, et
        al.,

14
                            Defendants.

15
                          I.       INTRODUCTION
16
             Before the court is Plaintiff GS Holistic, LLC's ("GS Holistic") motion for entry
17
       of default judgment against Defendants Empire Smoke Shop2, LLC ("Empire Smoke
18
       Shop") and Samer Shammar (together, "Defendants").  (Mot. (Dkt. # 12); *see* Prop.
19
       Judgment (Dkt. # 12-3).)  Neither Defendant has appeared in this action, and the Clerk
20
       has entered default against both Defendants.  (Entry of Default (Dkt. # 10).)  The court
21
       has considered GS Holistic's motion, the materials it submitted in support of its motion,
22

ORDER - 1

1   the relevant portions of the record, and the governing law.  Being fully advised, the court

2   GRANTS in part and DENIES in part GS Holistic's motion for entry of default

3   judgment.

## II.      BACKGROUND

5          GS Holistic is a Delaware limited liability corporation ("LLC") that has its

6   principal place of business in California.  (Compl. (Dkt. # 1) ¶ 4.)  It alleges that it is the

7   owner of the "STÜNDENGLASS" trademark, has worked to distinguish the

8   Stündenglass brand as "the premier manufacturer of glass infusers," and has devoted

9   significant time and resources promoting and protecting its trademark.  (*Id.* ¶¶ 4, 7-9, 14.)

10  GS Holistic has registered the following trademarks:  (1) U.S. Trademark Registration

11  No. 6,633,884 "for the standard character mark 'Stündenglass' in association with goods

12  further identified in registration in international class 011"; (2) U.S. Trademark

13  Registration No. 6,174,292 "for the design plus words mark 'S' and its logo in

14  association with goods further identified in the registration in international class 034";

15  and (3) U.S. Trademark Registration No. 6,174,291 "for the standard character mark

16  'Stündenglass' in association with goods further identified in registration in international

17  class 034" (together, the "Stündenglass Marks").  (*Id.* ¶ 10; *see also* Mot., Ex. A

18  (screenshots of pages from the United States Patent and Trademark Office's Trademark

19  Electronic Search System that describe each trademark).)  GS Holistic asserts that

20  consumers are willing to pay more for "the recognized quality and innovation associated

21  with the Stündenglass Marks."  (Compl. ¶ 20.)  Thus, genuine Stündenglass glass infusers

22

1   are priced at $599.95, while non-Stündenglass infusers sell for between $199.00 and

2   $600.00.  (*Id.*)

3        Defendant Empire Smoke Shop is a Washington corporation that has its principal

4   place of business in Washington.  (*Id.* ¶ 5.)  Defendant Samer Shammar is a resident and

5   citizen of Washington.  (*Id.* ¶ 6.)  GS Holistic asserts that Defendants sold counterfeit

6   products bearing the Stündenglass Marks.  (*Id.* ¶¶ 24-27.)  On December 9, 2022,

7   according to GS Holistic, its investigator visited Empire Smoke Shop's location;

8   observed that the shop had "an excess" of glass infusers that displayed the Stündenglass

9   Marks; purchased a glass infuser "with a Stündenglass Mark affixed to it" for $606.58;

10   and determined the glass infuser was a counterfeit product that displayed "the Infringing

11   Marks."  (*Id.* ¶ 29; *see also id.* ¶ 25 (defining the "Infringing Marks" as "reproductions,

12   counterfeits, copies, and/or colorable imitations of one or more of the Stündenglass

13   Marks").)

14        GS Holistic filed its complaint on March 6, 2023.  (*See id.* at 1.)  It alleges claims

15   under the Lanham Act against both Defendants for counterfeiting and trademark

16   infringement in violation of 15 U.S.C. § 1114 and for false designation of origin and

17   unfair competition in violation of 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 51-68.)  Among other

18   relief, it seeks damages, costs of suit, a permanent injunction prohibiting Defendants

19   from continuing to infringe its Stündenglass trademarks, and an order requiring

20   Defendants to deliver all infringing products to GS Holistic for destruction.  (*Id.* at

21   12-14.)

22

ORDER - 3

1    GS Holistic served Defendants on April 17, 2023.  (*See* Service Affs. (Dkt.

2    ## 7-8).)  The Clerk entered default on June 7, 2023.  (Entry of Default.)  GS Holistic

3    filed this motion for entry of default judgment on October 31, 2023.  (Mot.)

### III.    ANALYSIS

5    Below, the court sets forth the relevant legal standard and then evaluates GS

6    Holistic's motion for entry of default judgment.

7    **A.    Legal Standard**

8    Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default

9    judgment against a defaulting defendant upon the plaintiff's motion.  Fed. R. Civ. P.

10   55(a), (b)(2).  After default is entered, well-pleaded factual allegations in the complaint,

11   except those related to damages, are considered admitted and are sufficient to establish a

12   defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

13   1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

14   Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*,

15   616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the court considers

16   seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief

17   is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the

18   claims raised in the complaint; (4) the sum of money at stake in relationship to the

19   defendant's behavior; (5) the possibility of a dispute concerning material facts;

20   (6) whether default was due to excusable neglect; and (7) the preference for decisions on

21   the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

22   1986).  After the court determines that default judgment is appropriate, it must then

ORDER - 4

1  determine the amount and character of the relief that should be awarded.  *See TeleVideo*,

2  826 F.2d at 917-18.

3  **B.      Whether the *Eitel* Factors Favor Default Judgment**

4          The court preliminarily determines that default judgment is warranted in this case

5  because, on balance, the *Eitel* factors weigh in favor of such judgment.  The court

6  discusses each factor in turn.

7          1.      Possibility of Prejudice to Plaintiff

8          The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

9  judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

10  1177 (C.D. Cal. 2002).  Without default judgment, GS Holistic will suffer prejudice

11  because it will "be denied the right to judicial resolution" of its claims and will be

12  "without other recourse for recovery."  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D.

13  388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering default

14  judgment.

15          2.      Substantive Merits and Sufficiency of the Complaint

16          The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

17  and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

18  *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

19  judgment, the complaint's allegations must be sufficient to state a claim for relief.

20  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

21  standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

22  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

ORDER - 5

1  *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  At the default judgment

2  stage, the court "must take the well-pleaded factual allegations [in the complaint] as true"

3  but "necessary facts not contained in the pleadings, and claims which are legally

4  insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d

5  1261, 1267 (9th Cir. 1992).

6      GS Holistic alleges claims for trademark counterfeiting and infringement under 15

7  U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C.

8  § 1125(a).  (Compl. ¶¶ 51-68.)  The court reviews each in turn.

9          *a.      Trademark Counterfeiting and Infringement*

10     To prove liability for trademark infringement, the trademark holder must

11  demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the

12  alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to

13  deceive" consumers.  *Reno Air Racing Ass'n., v. McCord*, 452 F.3d 1126, 1134 (9th Cir.

14  2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

15  602 (9th Cir. 2005)).

16     First, uncontested proof that the plaintiff has registered the mark is sufficient to

17  establish ownership of a valid mark.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118,

18  1124 (9th Cir. 2014).  Thus, because GS Holistic alleges that it registered the

19  Stündenglass Marks, it satisfies the first element of trademark infringement for the

20  purpose of default judgment.  (Compl. ¶ 10.)

21     Second, "[l]ikelihood of confusion exists when consumers viewing the mark

22  would probably assume that the goods it represents are associated with the source of a

1   different product identified by a similar mark." *KP Permanent Make-Up*, 408 F.3d at

2   608.  Courts generally evaluate eight factors to determine whether confusion is likely:

3   "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of

4   the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree

5   of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent

6   in selecting the mark; and 8) the likelihood of expansion into other markets." *Id*.  Where

7   a defendant uses a counterfeit mark, however, courts both within and outside the Ninth

8   Circuit presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater*

9   *Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013)

10   (compiling cases); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse*

11   *Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a

12   court need only determine that the items at issue are counterfeit and that the defendant

13   distributed, offered for sale, or sold the items.").  The Lanham Act defines a "counterfeit"

14   as "a spurious mark which is identical with, or substantially indistinguishable from, a

15   registered mark."  15 U.S.C. § 1127.

16        Here, GS Holistic alleges that its investigator purchased a glass infuser with a

17   Stündenglass Mark "affixed" to it and determined that it was a counterfeit product that

18   displayed the "the Infringing Marks." (Compl. ¶ 29.)  GS Holistic further alleges that the

19   "Infringing Marks" are "reproductions, counterfeits, copies and/or colorable imitations of

20   one or more of the Stündenglass Marks." (*Id.* ¶ 25.)  Accordingly, the court concludes

21   that GS Holistic has sufficiently alleged that Defendants sold a product bearing a

22   counterfeit mark and, as a result, there is a presumption of consumer confusion.  *See*

1   *Coach, Inc.*, 2013 WL 5406220, at \*3.  Thus, because GS Holistic has demonstrated that

2   it owns a valid mark and that Defendants' use of the mark is likely to cause consumer

3   confusion, the court concludes that GS Holistic has sufficiently alleged its trademark

4   counterfeiting and infringement claim.

5                  b.       *False Designation of Origin*

6          To show liability for false designation of origin, the plaintiff must show that the

7   defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or

8   misleading description, or representation of fact, which (3) is likely to cause confusion or

9   misrepresents the characteristics of his or another person's goods or services." *Freecycle*

10   *Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).  As to the first two elements, GS

11   Holistic alleges that Defendants sold (and thus, used in commerce) at least one glass

12   infuser bearing at least one of its registered trademarks.  (Compl. ¶¶ 28-29.)  And the

13   court concluded above that GS Holistic has plausibly alleged a likelihood of confusion

14   resulting from Defendants' use of the trademarks.  Accordingly, GS Holistic has stated a

15   false designation of origin claim.

16          Because GS Holistic has demonstrated that its claims have substantive merit and

17   that it has sufficiently alleged those claims in its complaint, the court concludes that the

18   second and third *Eitel* factors weigh in favor of default judgment.

19          3.      <u>Sum of Money at Stake</u>

20          Under the fourth *Eitel* factor, "the court must consider the amount of money at

21   stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp.

22   2d at 1176.  Here, GS Holistic seeks (1) $150,000 in statutory damages—$50,000 per

1  Stündenglass trademark—for willful trademark counterfeiting under 15 U.S.C. § 1117(d)

2  and (2) costs in the amount of $1,263.58.  (*See* Mot. at 2.)  The court concludes that the

3  requested statutory damages and costs are not so unreasonable in relation to the conduct

4  alleged in the complaint as to weigh against entry of default judgment.

5          4.      Possibility of a Dispute over Material Facts

6         "The fifth *Eitel* factor considers the possibility of dispute as to any material facts

7  in the case." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where, as here, the defendant has

8  defaulted, the court must take all well-pleaded allegations in the complaint as true, except

9  those related to damages.  *TeleVideo*, 826 F.2d at 917-18; s*ee also Wecosign, Inc. v. IFG*

10  *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed

11  a well-pleaded complaint, the possibility of dispute concerning material facts is

12  remote.").  Thus, the court concludes there is little risk of dispute over material facts and

13  the fifth *Eitel* factor weighs in favor of granting default judgment.

14          5.      Excusable Neglect

15         The sixth *Eitel* factor considers the possibility that the defendant's default resulted

16  from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Here, GS Holistic has

17  provided evidence that Defendants were properly served (*see* Service Affs.), and there is

18  no evidence in the record that Defendants' failure to answer or respond is the result of

19  excusable neglect.  Accordingly, the court concludes that the sixth *Eitel* factor weighs in

20  favor of default judgment.

21  //

22  //

ORDER - 9

1         6.       Policy Favoring Decisions on the Merits

2         "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

3 782 F.2d at 1472. Where, as here, a defendant fails to appear or defend itself in action,

4 however, the policy favoring decisions on the merits is not dispositive. *PepsiCo*, 238 F.

5 Supp. 2d at 1177. Therefore, the court concludes that the seventh *Eitel* factor does not

6 preclude entry of default judgment.

7         In sum, because the *Eitel* factors weigh in favor of default judgment, the court

8 concludes that entry of default judgment is warranted in favor of GS Holistic on its

9 claims against Defendants.

10 **C.**    **Requested Relief**

11         The court now turns to the issue of remedies. "A default judgment must not differ

12 in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P.

13 54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). Defaulting

14 defendants are not deemed to have admitted the facts alleged in the complaint concerning

15 the amount of damages. *TeleVideo*, 826 F.2d at 917. Rather, the plaintiff "must 'prove

16 up' the amount of damages that it is claiming." *Philip Morris USA, Inc. v. Castworld*

17 *Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash.

18 LCR 55(b)(2).[1] By analogy, plaintiffs must also "prove up" their entitlement to other

19

20      [1] This court's Local Civil Rules require plaintiffs to support a motion for default
judgment with:

21

       a declaration and other evidence establishing [the] plaintiff's entitlement to a sum
       certain and to any nonmonetary relief sought. [The] [p]laintiff shall provide a
22        concise explanation of how all amounts were calculated, and shall support this

ORDER - 10

1  forms of relief, such as a permanent injunction.  *See Gucci Am., Inc. v. Tyrrell–Miller*,

2  678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

3      GS Holistic requests statutory damages, litigation costs, injunctive relief, and

4  destruction of the infringing products.  (*See* Mot. at 11-14.)  The court considers each

5  remedy below.

6      1.      Statutory Damages

7      Under the Lanham Act, a plaintiff may elect whether to recover its actual damages

8  caused by the defendants' use of a counterfeit mark or statutory damages.  15 U.S.C.

9  § 1117(c).  GS Holistic has elected to seek statutory damages.  (Mot. at 11-12; *see*

10  Compl. at 12-13 (including statutory damages in its prayer for relief).)

11      The court has discretion to award statutory damages between $1,000 and $200,000

12  "per counterfeit mark per type of goods or services sold, offered for sale, or distributed,

13  as the court considers just."  15 U.S.C. § 1117(c)(1).  If, however, the court finds that the

14  trademark violation was willful, it may award up to $2,000,000 for each infringement.

15  *Id.* § 1117(c)(2).  "[S]tatutory damages may compensate the victim, penalize the

16  wrongdoer, deter future wrongdoing, or serve all those purposes."  *Y.Y.G.M. SA v.*

17  *Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v.*

18  *Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)).  When determining the

19

20
   explanation with evidence establishing the entitlement to and amount of the
   principal claim, and, if applicable, any liquidated damages, interest, attorney's fees,
21   or other amounts sought[.]

22  Local Rules W.D. Wash. LCR 55(b)(2).

1   appropriate amount of statutory damages to award on default judgment, courts consider

2   whether the amount bears a "plausible relationship to [the p]laintiff's actual damages."

3   *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc.*

4   *v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)).  That

5   is, although a plaintiff in a trademark infringement suit is entitled to damages that will

6   compensate and serve as a deterrent, "it is not entitled to a windfall."  *Id.*

7       GS Holistic requests statutory damages of $50,000 for each of its registered

8   trademarks, for a total of $150,000.  (Mot. at 11-12.)  GS Holistic's evidence of its actual

9   damages caused by Defendants' trademark violations, however, is limited to allegations

10   that its investigator observed "an excess of Glass Infusers which displayed" the

11   Stündenglass Marks and purchased a single glass infuser with an unspecified

12   Stündenglass Mark "affixed to it" for $606.58.  (*See* Compl. ¶ 29.)  GS Holistic contends

13   that its chief executive officer's ("CEO") declaration establishes that $150,000 is "only a

14   fraction of the actual losses to its business" caused by counterfeiters.  (Mot. at 12.)  That

15   declaration, however, provides no explanation of how GS Holistic's CEO determined that

16   the company's total U.S. sales would have quadrupled in 2021 if there were no

17   counterfeit products in the market and it says absolutely nothing about the damages

18   specifically caused by the Defendants in this case.  (*See generally* 2d Folkerts Decl. (Dkt.

19   # 14) ¶¶ 15-16.)  The court is sympathetic to the difficulties GS Holistic faces in

20   estimating actual damages with any degree of certainty without the benefit of

21   Defendants' cooperation in discovery.  (*See* Mot. at 12.)  Without more evidence,

22   however, the court cannot conclude that an award of $50,000 in statutory damages for

1   each of GS Holistic's three registered trademarks bears a "plausible relationship" to GS

2   Holistic's actual damages.  *Yelp Inc.*, 70 F. Supp. 3d at 1102.

3        Because GS Holistic alleges only that the glass infuser its investigator purchased

4   had "a Stündenglass Mark affixed to it" (Compl. ¶ 29), the court concludes that GS

5   Holistic is entitled to statutory damages based on Defendants' conduct with respect to

6   only one trademark.  The court further concludes, in its discretion, that an award of

7   $5,000 for one trademark violation will serve the compensatory, penal, and deterrent

8   purposes of statutory damages without resulting in an undue windfall for GS Holistic.

9   This amount equates to more than eight times the price of the allegedly infringing glass

10  infuser purchased by GS Holistic's investigator.  (*See id.*)  Accordingly, the court awards

11  GS Holistic statutory damages of $5,000.

12       2.    Litigation Costs

13       Under the Lanham Act, a plaintiff who establishes that a defendant has violated a

14  trademark "shall be entitled, . . . subject to the principles of equity, to recover . . . the

15  costs of the action."  15 U.S.C. § 1117(a).  Here, GS Holistic seeks costs in the total

16  amount of $965.27, consisting of the filing fee ($402.00), its process server fees

17  ($190.00), and its investigator's fees ($671.58).  (Mot. at 13 (citing Harris Decl. (Dkt.

18  # 15) ¶ 6); *see* Compl. at 12-13 (including costs of suit in its prayer for relief).)  The court

19  awards GS Holistic its filing fee and process server fees because these are costs that are

20  routinely awarded in Lanham Act cases.  GS Holistic has not, however, cited any

21  authority for the proposition that its investigator's fees are recognized "costs of the

22

1    action" under the Lanham Act.  (*See generally* Mot.)  Therefore, the court awards GS

2    Holistic costs in the amount of $592.00.

3        3.    Injunctive Relief

4        The Lanham Act empowers courts "to grant injunctions, according to the

5    principles of equity and upon such terms as the court may deem reasonable, to prevent

6    the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).

7        According to well-established principles of equity, a plaintiff seeking a
         permanent injunction must satisfy a four-factor test before a court may grant
8        such relief.  A plaintiff must demonstrate:  (1) that it has suffered an
         irreparable injury; (2) that remedies available at law, such as monetary
9        damages, are inadequate to compensate for that injury; (3) that, considering
         the balance of hardships between the plaintiff and defendant, a remedy in
10       equity is warranted; and (4) that the public interest would not be disserved
         by a permanent injunction.

11
*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar
12
language in considering a motion for permanent injunctive relief under the Patent Act).
13
The Lanham Act provides, in the case of a motion for a permanent injunction, that a
14
"plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of
15
irreparable harm upon a finding of a [trademark] violation."  15 U.S.C. § 1116(a).
16
     GS Holistic asks the court to enter the following permanent injunction enjoining
17
Empire Smoke Shop, Mr. Shammar, and "their agents, employees, officers, directors,
18
owners, representatives, successor companies, related companies, and all persons acting
19
in concern or participation with it" from:
20
21       (a) Import, export, making, manufacture, reproduction, assembly, use,
             acquisition, purchase, offer, sale, transfer, brokerage, consignment,
             distribution, storage, shipment, licensing, development, display, delivery,
22           marketing advertising or promotion of the counterfeit Stündenglass

1           product identified in the complaint and any other unauthorized
          Stündenglass product, counterfeit, copy or colorful imitation thereof;
2           [and]

3     (b) Assisting, aiding or attempting to assist or aid any other person or entity
          in performing any of the prohibited activities referred to in Paragraph[]
4           (a) above.

5 (Mot. at 13-14; *see also* Prop. Judgment.)

6     The court declines to enter the requested permanent injunction.  First, GS Holistic

7 argues only that it is entitled to injunctive relief "[b]y the reasons explained in [its]

8 Complaint." (Mot. at 13.)  It does not address the factors a court must consider before

9 entering a permanent injunction.  (*See id.*); *see eBay Inc.*, 547 U.S. at 391.  Second, the

10 injunction GS Holistic seeks now is broader than the injunction outlined in its complaint,

11 which does not include an injunction against "[a]ssisting, aiding or attempting to assist or

12 aid" others against performing the actions listed in part (a) of the proposed injunction.

13 (*Compare* Compl. at 13, *with* Prop. Judgment at 2.)  Third, although GS Holistic's

14 complaint describes the sale of one counterfeit Stündenglass glass infuser displaying one

15 unspecified Stündenglass Mark, it requests a wider injunction relating to "the counterfeit

16 Stündenglass product identified in the complaint and any other unauthorized

17 Stündenglass product." (*Compare* Compl. ¶ 29, *with* Prop. Judgment at 2.)  Finally,

18 "every order granting an injunction" must "describe in reasonable detail—and not by

19 referring to the complaint or other document—the act or acts restrained or required."

20 Fed. R. Civ. P. 65(d).  GS Holistic's proposed order violates this rule by referring to "the

21 counterfeit Stündenglass product identified in the complaint." (*See* Prop. Judgment at 2.)

22

ORDER - 15

1   For these reasons, the court denies GS Holistic's request that it enter a permanent

2   injunction.

3           4.      Destruction of Infringing Products

4           Finally, GS Holistic seeks an order directing Defendants, "at their cost, [to] deliver

5   to [GS Holistic] for destruction all products, accessories, labels, signs, prints, packages,

6   wrappers, receptables, advertisements, and other material in their possession, custody or

7   control bearing any of the Stündenglass Marks." (Mot. at 14; *see also* Prop. Judgment at

8   2.)  The Lanham Act authorizes the court to issue an order directing the destruction of

9   articles that infringe upon a trademark.  15 U.S.C. § 1118.  Here, however, GS Holistic

10  has not presented any argument or evidence supporting its entitlement to this relief,

11  and—as with its request for a permanent injunction—its request for destruction of any

12  article "bearing any of the Stündenglass Marks" is not supported by its investigator's

13  purchase of a single glass infuser bearing an unspecified Stündenglass Mark.  (*See* Mot.

14  at 14; Compl. ¶ 29.)  As a result, the court denies GS Holistic's request for an order

15  directing the destruction of allegedly infringing products.

16                          **IV.    CONCLUSION**

17          For the foregoing reasons, the court GRANTS in part and DENIES in part GS

18  Holistic's motion for default judgment (Dkt. # 12).  Specifically, the court GRANTS GS

19  Holistic's request for entry of default judgment against Empire Smoke Shop and Mr.

20  Shammar; AWARDS GS Holistic statutory damages in the amount of $5,000 and

21  //

22  //

ORDER - 16

1    litigation costs in the amount of $592.00; and DENIES GS Holistic's requests for entry of

2    a permanent injunction and for an order directing the destruction of infringing products.

3         Dated this 6th day of November, 2023.

4

5         _____

6                    JAMES L. ROBART
                      United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 17